## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| D.S., a Minor, and R.M., individually, and as Parent and Guardian of D.S., | CIVIL ACTION NO. 3:24-CV-00184 |
| Plaintiffs, | (SAPORITO, J.) |
| v. |  |
| BLUE RIDGE SCHOOL DISTRICT, |  |
| Defendant. |  |

## <u>MEMORANDUM</u>

This action is brought by two plaintiffs, the Student and the Student's parent, against the Blue Ridge School District (the "District") for the District's alleged failure to follow the procedures of the Individuals with Disabilities Education Act ("IDEA"). The plaintiffs seek to reverse and remand two decisions: (1) a finding of the Student's ineligible for disability protections under the IDEA; and (2) a finding that the Student did not have a right to a manifestation determination review. The parties have each filed motions for judgment on the pleadings. (Doc. 23; Doc. 27). The motions have been fully briefed (Doc. 24; Doc. 28; Doc. 29) and they are ripe for review.

## I.    Statutory Framework

The Individuals with Disabilities Education Act requires that institutions receiving federal education funding provide a free and appropriate public education ("FAPE") to disabled children. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729 (3d Cir. 2009) (quoting 20 U.S.C. § 1412(a)(1). A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an Individualized Education Plan ("IEP"), which "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Id.* at 729–30 (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004)) (citations and internal quotation marks omitted). A school district must conduct an evaluation of the student's needs, assessing all areas of suspected disability before providing special education and related services to the child. *Id.* at 730 (citing 20 U.S.C. § 1414(b)).[1] When a parent believes a school district has failed to provide a

---

[1] The IDEA also requires that a state have a system in place to "identify, locate, and evaluate all children in the state who have disabilities and need special education and related services. *P.P. ex rel. Michael P.*, 585 F.3d at 730 (citing 20 U.S.C. § 1414(b) and 34 C.F.R. § *(continued on next page)*

student with a FAPE, "a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing office." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (citations, brackets, and internal quotation marks omitted). "A party dissatisfied with the result of that hearing may then file an action in state or federal court." *Id.*

A district court under the IDEA "is authorized to grant 'such relief as the court determines is appropriate,' including attorneys' fees, reimbursement for a private education placement, and compensatory education." *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 802 (3d Cir. 2007) (quoting 20 U.S.C. § 1415(i)(2)(C)(iii)). "Compensatory education 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA,' by providing the education services children should have received in the first instance." *G.L.*, 802 F.3d at 608 (quoting *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)). "This 'judicially-created remedy … has received the imprimatur of this Court,' and reflects the 'broad discretion' that

---

300.111(a)). The Commonwealth of Pennsylvania has codified these duties at 22 Pa. Code. §§ 14.121–14.125. *Id.*

Congress has granted to the courts to 'remedy the deprivation of the right to a free appropriate education.'" *Id.* (internal citations omitted).

## II.    Factual Background[2]

On May 19, 2023, the Student was expelled from the District for 180-days after an altercation between himself and a school administrator. While the parties have provided few details of the event itself, the parties agree that the Student told the District's principal to "get out of my face or I'm going to punch you." (Doc. 24, at 6); (Doc. 28, at 6) (alleging the "Student got within inches of the Principal's face and "threaten[ed] to punch him in the face and take him the F*** out."). The action deals with the District's alleged actions after the suspension under the procedures of the IDEA.

On October 19, 2023, and during the Student's expulsion from school, the District developed a multidisciplinary evaluation as required under 34 C.F.R. § 300.304, to determine whether the Student fell under a disability category under the IDEA, and thus, whether the Student

_____

[2] While the facts are generally taken from the pleadings (Doc. 4; Doc. 27), those facts are supplemented by added details taken from both parties' briefs where appropriate. (Doc. 24; Doc. 28). The facts are undisputed.

should be eligible for disability services. After compiling an assortment of information, the District found that the Student was ineligible for services under the IDEA, thereby denying the Student disciplinary protections under the IDEA. On November 2, 2023, the plaintiffs filed a special education due process complaint with the Pennsylvania Office for Dispute Resolution requesting that a special education hearing officer find the Student eligible for services under the IDEA. The plaintiffs further requested a manifestation determination to determine whether the Student's behavior causing the expulsion was a manifestation of his disability.

On review, a special education hearing officer ruled that based on the information provided in the District's report, the Student was ineligible for services under the IDEA. The hearing officer, however, found that the District's evaluation report was inadequate and ordered the District to pay for an independent education evaluation to assess the Student's disability. The plaintiffs appeal this decision in this action ("Decision 1").

As ordered by the hearing officer, an independent evaluator developed its own evaluation and determined that the Student should be

eligible for services under the IDEA based on a diagnosis of emotional disturbance and other health impairments. The District subsequently adopted the independent evaluator's findings and developed a special education program for the Student. The plaintiffs then amended their due process complaint to claim that the District failed to conduct a manifestation determination review after adopting the IEE report. The Act mandates that the District conduct a manifestation determination review "[w]ithin 10 school days of any decision to change the placement of a child with a disability…" to determine if the child's actions were caused, directly or indirectly, by the child's disability. 34 C.F.R. 300.530(e). The plaintiffs argued that the phrase, "[w]ithin 10 school days of any decision to change the placement of a child with a disability…," applied to the Student once he was found IDEA eligible, and thus, the District had ten days to conduct a manifestation determination review. The plaintiffs further argued that once the District found that the Student's disability caused the actions leading to his suspension, the District should undue the expulsion and place the Student back in school.

Upon review of the language, the same hearing officer concluded that the plaintiffs' interpretation of 34 C.F.R. 300.530(e) was incorrect.

The hearing officer reasoned the District could not possibly conduct a manifestation determination within 10 days of the Student's suspension because seven months had already passed since the suspension. Therefore, the plaintiffs' interpretation would lead to an "absurd standard."[3] For this reason, the hearing officer found that a manifestation determination review was not required concerning the Student's suspension and denied the Student disciplinary protections under the IDEA ("Decision 2"). The plaintiffs have moved to reverse and remand this decision.

---

[3] The Supreme Court has held that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Moreover, "where the plain meaning would lead to an absurd result, we presume 'the legislature intended exceptions to its language [that] would avoid results of this character.'" *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014) (quoting *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979)). The hearing officer incorporated the "absurd result" standard when interpreting 300.530(e)(1). The plaintiffs have argued that the hearing officer mistakenly applied the "absurd result" standard to this action. (Doc. 24, at 12). The District has argued the "absurd result" standard supports its argument. (Doc. 28, at 26). Nonetheless, as we articulate in more detail below, our analysis of 300.530(e)(1) does not address the "absurd result" standard because we find the plain language adequately expresses Congress's intent and aligns with the purposes of the IDEA. Therefore, we need not delve into the "absurd result" standard analysis.

The plaintiffs appeal both Decision 1 and Decision 2 in this action.

## II.    Standard of Review

## A.    Reviewing a State Administrate Decision Under IDEA

"When considering a petition for review challenging a state administrative decision under the IDEA, a district court applies a nontraditional standard of review, sometimes referred to as 'modified de novo' review." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012) (international quotation marks omitted); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012). "Although the [court] must make its own findings by a preponderance of the evidence, the [court] must also afford 'due weight' to the [administrative hearing officer's] determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citing *Bd. of Educ. v. Rowley*, 438 U.S. 176, 206 (1982)); *see also Ridley Sch. Dist.*, 680 F.3d at 268. "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (internal quotations marks omitted); *see also Ridley Sch. Dist.*, 680 F.3d at 268; *D.K.*, 696 F.3d at 243. "'[T]he party

challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.'" *Tyler W. v. Upper Perkiomen Sch. Dist.*, 963 F. Supp. 2d 427, 433 (E.D. Pa. 2013) (quoting *Ridley Sch. Dist. v. M.R.¸* 680 F.3d 260, 270 (3d Cir. 2012)).

### B.    Motion for Judgment on the Pleadings

Both parties have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 23; Doc. 27). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'") (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)). In deciding

a Rule 12(c) motion, we may also consider "matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005); *see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999) ("In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record."). Ultimately, "[a] party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–470 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988), and *Inst. For Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)).

## III.    Discussion

The plaintiffs request that the court reverse and remand Decision 1 and Decision 2 of the hearing officer. (Doc. 24, at 27).

### A.    Decision One: Denial the Student's Disabled Status

The plaintiffs' first contention involves whether the special hearing officer erred in his original finding that the Student was not considered

disabled under the IDEA and thus, ineligible for services under the IDEA. The plaintiffs have argued that the hearing officer incorrectly concluded the Student was ineligible for services "despite extensive information to the contrary found within" the District's evaluation report. (Doc. 24, at 9). Therefore, the plaintiffs seek a reversal and a remand of the hearing officer's first decision. The hearing officer's decision concerning the Student's eligibility pertains to findings of fact, and therefore, we must consider those findings to be *prima facie* correct while affording the hearing officer's decision with "due weight." *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 194 (emphasizing the court must afford "due weight" to the administrative hearing officer's determination"); *P.P ex rel. Michael P.*, 484 F.3d at 734 (holding that an administrative hearing officer's factual findings are considered "prima facie correct."). Moreover, the plaintiffs bear the burden of persuasion in their claim. *See Tyler W.*, 963 F. Supp. 2d at 433 ("[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.").

The plaintiffs' main contention lies with the hearing officer's alleged failure to analyze what they call, "relevant information," within

the District's evaluation report. *See* (Doc. 4, at 12) (noting the hearing officer's "failure to adequately consider the … relevant information when he ruled against the Student regarding eligibility under the IDEA…."). The plaintiffs have included in their supporting brief "an extensive list of information contained within the School District's [evaluation report] that supports the conclusion that the Student should have been eligible for Services under the IDEA[.]" (Doc. 24, at 9); *see* (Doc. 29, at 9–13) (providing a list of all its supporting evidence). We note that the plaintiffs must, however, do more than simply provide evidence that may support their argument. As they bear the burden of persuasion, the plaintiffs must persuade the Court that the record contradicts the factual findings of the hearing officer. *See S.H. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) (finding that when taking "factual findings as prima facie correct, [the court] must decide whether the record contradicts those findings."). Upon review of the totality of the record, we find the plaintiffs' argument unpersuasive.

The record indicates that the hearing officer considered and addressed many of the plaintiffs' "relevant facts" provided in their supporting brief. For example, the District's evaluation report relied

prominently on the input of the parents, and the plaintiffs have alleged that the hearing officer failed to address the information contained in: (1) the Parent Input section of the ER (Doc. 24, at 24); (2) a parent survey through the Behavior Assessment System for Children (Doc. 24, at 11); and (3) a parent report through the Scale for Assessing Emotional Disturbance (Doc. 24, at 12). The hearing officer, however, addressed this evidence when he voiced his concerns with the parent's credibility in her responses. *See* (Doc. 4-3, at 18) ("The Mother's input, while valuable, is questionable in light of her elevated BASC-3 F-Index Rankings….").[4] Moreover, the plaintiffs point to the Student's disciplinary record "which included many infractions resulting in detentions, suspensions and also a previous full school year expulsion." (Doc. 24, at 10). Nonetheless, the hearing officer addressed this contention in his report. The hearing officer acknowledged the Student's high level of disciplinary referrals within a year, but he found "that the sudden uptick in discipline during the 2021-2022 school year was related to the teacher's classroom

---

[4] The Third Circuit has held that the District Court must "accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004).

management practices," rather than a disability. (Doc. 24-1, at 19).

Indeed, we note that these are only two of the many examples showing

that the hearing officer adequately considered the "relevant

information." Thus, we disagree with the plaintiffs' contention.

Next, we turn to an independent review of the record. After careful

consideration and affording "due weight" to the hearing officer's

determination, we affirm the hearing officer's decision in finding that the

Student did not fall under a disability category under the IDEA, and

thus, he was not eligible for disability services. We agree that the record

lacked "preponderant proof of disability status and the need for specially

designed instruction." (Doc. 24-1, at 18). Nonetheless, we must clarify the

context of the hearing officer's decision. The hearing officer did not reject

the Student's disability status in a vacuum but rather clarified that his

determination was based on "an expedited evaluation that lacked a

variety of valid assessments of the Student's social, emotional, or

behavioral function." (*Id.*, at 21). The hearing officer laid out a variety of

defects within the District's evaluation report that prevented him from

conducting a comprehensive assessment. *See* (Doc. 24-1, at 21) (finding a

"narrow understanding of the Student's profile eliminated all academic

assessments and repeated the earlier substantive assessment and evaluation error"); *see* (Doc. 24-1, at 22) ("[T]he record lacks documentation that a team of knowledgeable individuals reviewed a variety of assessments in all areas of need. These errors interfered with the Parent's participation and are substantive in nature."); *see* (Doc. 24-1, at 23) ("Without a checklist or rating scale gauging the degree or significance of the barriers, the psychologist's conclusions do not pass muster as a valid measure of the Student's circumstances or needs."). Therefore, the hearing officer ordered the District to fund an "expedited" independent educational evaluation ("IEE") concerning the Student's eligibility. (Doc. 24-1, at 24). It is undisputed that the District accepted and adopted the evaluation's conclusion once the IEE found the Student eligible for the protections under the IDEA. *See* (Doc. 4, ¶ 33) (noting the plaintiffs' amended complaint conceded "[t]he School District did not refute the independent evaluator's findings and have developed special education programming for the Student."); *see also* (Doc. 28, at 10) (noting the defendant admitted "[a]fter receiving and considering the IEE report, the school district decided to accept its conclusion that Student qualifies under the IDEA as a student with an Emotional Disturbance

and on Other Health Impairment.").

We agree with the hearing officer's assessment that the District's evaluation report showed significant flaws and acknowledge that once a more comprehensive IEE was created, the District adopted its findings that the Student had a disability. However, as the District has noted, the "invalidity of the Evaluation Report's processes does not prove [the] Student has a disability; it proves only a deficient process (and relief followed)." (Doc. 28, at 18). The hearing officer offered the appropriate relief when requesting an independent party conduct an IEE to supplement the District's flawed evaluation report. Therefore, in light of this analysis, we will grant the District's motion for judgment on the pleadings as we find the hearing officer both appropriately found the Student not disabled under the IDEA and ordered an IEE when finding the School District's evaluation report "procedural[ly] and substantively flawed." (Doc. 24-1, at 23).

**B.    Decision Two: Denial of a Manifestation Declaration**

The plaintiffs' second contention concerns whether the hearing officer was obligated to conduct a manifestation determination once the student was found to be disabled by the District. Section 300.530(e)(1)

dictates that:

> *Within 10 school days of any decision to change the placement of a child with a disability* because of a violation of a code of student conduct, the LEA, the parent, and relevant members of the child's IEP Team (as determined by the parent and the LEA) must review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine–
>> (i) If the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or
>> (ii) If the conduct in question was the direct result of the LEA's failure to implement the IEP.

34 C.F.R. 300.530(e)(1)(i,ii) (emphasis added).[5] Here, the Student's suspension constitutes the "change of placement."[6] The parties disagree with the interpretation, and implications, of the language "[w]ithin 10 school days of any decision to change the placement of a child with a disability."

It is undisputed that before the District adopted the IEE's report finding a disability, the Student was not entitled to a manifestation

---

[5] 34 C.F.R. 300.530(e) is codified under 20 U.S.C. § 1415(E).

[6] Change of placements can also include, among other actions, expulsions, disenrollments, and removal from graduations. *R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 759 (E.D. Pa. 2010), *aff'd sub nom. R.B. v. Mastery Charter Sch.,* 532 F. App'x 136 (3d Cir. 2013)

determination review as the Student was not "a child with a disability" at the time of the suspension. However, the parties disagree on whether the Student was entitled to a manifestation determination review once the Student was found to have a disability. The plaintiffs argue that the language, "any decision to change the placement of a child with a disability," is broad enough to apply to the Student's situation in the current case. (Doc. 24, at 17). They contend that once the Student was found to be disabled, he fell under the protections of the IDEA because he was now "a child with a disability" that had "suffered a change of placement." (*Id.*). Therefore, 300.530(e) mandated that the District conduct a manifestation determination within ten days to determine whether the Student's actions leading to his suspension related to his disability. (*Id.*). The District argues for a narrower interpretation of 300.530(e). It contends that the manifestation determination application only pertains to children that have been found to have a disability at the time of the change in placement. (Doc. 28, at 28). Therefore, the District argues the manifestation determination requirement is not applicable to the current case, because at the time of the Student's change of placement (i.e., the suspension), the Student was not "a child with a disability." (*Id.*).

Here, the hearing officer agreed with the District and rejected the plaintiffs' interpretation of section 300.530(e)(1) on the basis that it would lead to an absurd result. (Doc. 24-2, at 14). The hearing officer found it would have been impossible to conduct a manifestation determination review within ten days of the decision to suspend the Student because that decision occurred seven months prior. (*Id.*). Moreover, he held that the plaintiffs' interpretation would require him to "ignore the plain language and structure of" section 300.530(e)(1), which only deals with "a child with a disability." (*Id.*). We note that while the hearing officer's legal analysis is instructive, "[t]he district court's review of the hearing officer's application of legal standards and conclusions of law … is subject to plenary review." *Jana K. ex rel. Tim K v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 585, 594 (M.D. Pa. 2014) (citing *Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999)); *see also M.S.-G v. Lenape Reg'l High Sch. Dist. Bd. of Educ.*, 306 F. App'x 772, 773 n.1 (3d Cir. 2009) ("Although the District Court must employ a modified *de novo* review of the decisions of an administrative fact finder, and we, in turn, review the District Court's factual findings for clear error, no such deference is called for when the decisions of the ALJ and District Court involve only

questions of law."). Therefore, we do not owe the hearing officer any deference in his interpretation of 300.530(e)(1). This case requires us to undergo an independent analysis of section 300.530(e)(1) to determine its application to this case.

We must first begin our statutory analysis by examining the plain language of the statute. *See B & G Constr. Co. v. Dir., Off. Of Workers' Comp. Programs*, 662 F.3d 233, 248 (3d Cir. 2011); *see also Da Silva v. Attorney Gen. U.S.*, 948 F.3d 629, 635 (3d Cir. 2020) ("In determining whether language is unambiguous, we read the statute in its ordinary and natural sense.") (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "[W]hen interpreting a statute, we strive to give effect to every word which Congress used and to avoid any interpretation which renders an element of the statute superfluous." *B & G Constr. Co.*, 662 F.3d at 248–49. "Where we find that the statutory language has a clear meaning, we need not look further." *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (citing *Robinson*, 519 U.S. at 340); *see also B & G*

*Constr. Co.*, 662 F.3d at 248 ("Where the statutory language is plain and unambiguous we rarely need to inquire into the meaning of the statute beyond examining its wording.").

On review, the plain language of 300.530(e)(1), "[w]ithin 10 school days of any decision to change the placement of a child with a disability," unambiguously refers only to circumstances involving a placement change "of a child with a disability." Moreover, that language additionally indicates that the child must have a disability at the time of the decision to change its placement. Here, the Student was not found to be disabled at the time of his suspension, and the record indicates that the District had no previous knowledge of a disability. Therefore, the District was not required to conduct a manifestation determination when it decided to suspend the Student because he was not, at the time of the suspension, considered "a child with a disability." *See G.R. by & through Jennifer R. v. Colonial Sch. Dist.*, No. CV 17-2749, 2019 WL 1128758, at *5 (E.D. Pa. Mar. 12, 2019) (finding no requirement to conduct a manifestation determination without knowledge of the plaintiff's alleged disability.").

We look to the purposes of the IDEA to support this interpretation. The IDEA "offers States federal funds to assist in educating children with

disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 386 (2017). In order for the protections of the IDEA to apply, it is not enough that a child have a disability. Indeed, a school district must have *knowledge* of that disability for a child to invoke the IDEA's protections. Without that knowledge, a school district can treat a child with a disability similar to one without a disability. We look to 20 U.S.C. § 1415(k)(5)(D)(i). The statute states that "[i]f a public agency does not have knowledge that a child is a child with a disability … prior to taking disciplinary measures against the child, the child may be subjected to the disciplinary measures applied to children without disabilities who engage in comparable behaviors." U.S.C. § 1415(k)(5)(D)(i). The IDEA provides that children with a disability can be disciplined the same as those without disabilities if the local agency does not have knowledge of that disability. It is for this reason that the IDEA mandates "that public educational institutions *identify* and effectively educate [children with disabilities]" as schools can only provide a FAPE or IEP "[o]nce a child is *identified* as having special needs." *G.L v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (internal quotation marks omitted). Consequently, schools must have knowledge

of a disability for a student to invoke the IDEA's protections and procedures. Therefore, in this case, the District must have had knowledge that the Student was "a child with a disability" at the time of the suspension for the Student to invoke the requirement of 300.530(e).[7] As the hearing officer found in Decision 1, however, the District did not have knowledge that the Student had a disability at the time of the

---

[7]  A school district's direct knowledge of a disability can invoke the protections of the IDEA. Nonetheless, the IDEA additionally implicates schools that should have known about a disability. *See* 20 U.S.C. §§ 1415(k)(5)(B)(i–iii):

> A local educational agency shall be deemed to have knowledge that a child is a child with a disability if, before the behavior that precipitated the disciplinary action occurred–
>
> (1) The parent of the child has expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services;
>
> (2) The parent of the child requested an evaluation of the child pursuant to section 1414(a)(1)(B) of this title; or
>
> (3) The teacher of the child, or other personnel of the local educational agency, has expressed specific concerns about a pattern of behavior demonstrated by the child, directly to the director of special education of such agency or to other supervisory personnel of the agency.

suspension. Therefore, the hearing officer rightfully concluded that a manifestation determination was not required. We will deny the plaintiffs' motion for judgment on the pleadings and grant the District's motion for judgment on the pleadings.

### IV.    Conclusion

For these reasons, we will deny the plaintiffs' motion for judgment and grant the District's motion for judgment on the pleadings.

An appropriate order follows.

Dated: March 31, 2025                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge